IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE ANAYA,

    Plaintiff,

v.                                                                                                                                                                                                                 No. 1:21-cv-00046-RB-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    Before the Court is Plaintiff Antoinette Anaya's Motion to Reverse and/or Remand. [Doc. 29]. This case has been referred to me to recommend an ultimate disposition in the case. [Docs. 8, 37]. Having reviewed the parties briefing and the Administrative Record ("*AR*"), I find that the Commissioner erred by failing to follow a prior remand order in this case and thus recommend the Plaintiff's motion be granted. To aid the Court in resolving this case, I also analyze a separate ground for reversal and find it meritless.

**I.**    **INTRODUCTION**

    This case turns on a simple issue: When a reviewing court remands an administrative claim back to the agency and orders that agency to perform a specific analysis and make specific findings, does the agency need to do it? I find that the answer is "yes." Social security appeals are often remanded because the Administrative Law Judge ("ALJ") below failed to make certain findings or perform an analysis the district court believes is necessary to review the case. When cases are remanded for this reason, it is not enough for the ALJ to generally rehash the same evidence in greater detail. The analysis and findings ordered must be performed and made. I find that Judge Fashing unambiguously ordered a function-by-function analysis of Anaya's

1

abilities to sit, stand, and walk over the course of an eight-hour workday and that ALJ Richter did not perform that analysis. The case should thus be remanded.

## II.     BACKGROUND AND PROCEDURAL HISTORY

This case spans nearly ten years and now two appeals to the district court. Anaya first applied for disability insurance benefits under Title II of the Social Security Act on June 5, 2013, claiming her disability began on April 13, 2013. *AR* at 167.[1] The Administration denied Anaya's application initially on February 13, 2014 (*AR* at 84), and on reconsideration on September 12, 2014. *AR* at 111. Anaya received her first hearing before ALJ Lillian Richter on June 30, 2016 (*AR* at 36–83), who affirmed the Administration's decision to deny benefits on August 4, 2016. *AR* at 14.

Evidence was gathered suggesting Anaya possessed both physical and mental limitations. She stated that "blood clots" and a ruptured tendon caused pulsating pain, swelling, and bruising in her legs. *AR* at 46–47. To relieve those problems, she kept her legs elevated, rested "quite a bit," and took medication. *AR* at 48. She said that sitting for extended periods of time was difficult and she often had to stand up and walk around during church meetings. *AR* at 50. She also discussed taking care of her daughter (*AR* at 41–42); tending to her yard (*AR* at 55); and doing door-to-door outreach with members of her church, albeit using a car to go between houses (*AR* at 49–50), suggesting she could engage in some physical activity despite reported pain. As for mental difficulties, Anaya stated that she experienced depression symptoms, including low motivation, and has had anxiety attacks. *AR* at 51–52. She reported in her 2016 hearing that medication helped "[a] little" with these symptoms. *AR* at 51–52. Elsewhere, though, she reported that medication helped considerably. *AR* at 534, 536.

---

[1] Document 22 comprises the sealed Certified Transcript of the Administrative Record. The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

The evidence also included medical records and opinions from experts. In April 2013, Anaya was diagnosed with multiple occlusive and nonocclusive pulmonary emboli and acute deep vein thrombosis, anemia, and menorrhagia. *AR* at 312. Blood clotting in her leg thereafter required treatment up through 2016. [*See* Doc. 29, pp. 5–6] (describing Anaya's hospital visits and appointments with doctors). Medical records also show that Anaya was prescribed amitriptyline, an antidepressant, and was later diagnosed with depression. *AR* at 525, 529. Dr. Finian Murphy, Ed.D., performed a consultative mental status evaluation in which he tested Anaya's mental and cognitive abilities. *AR* at 366–68. He noted that Anaya could spell the word "radio" forward and backward; could do basic math and make change; could exercise average judgment; and correctly interpreted common idioms. *AR* at 368. He opined as follows:

> [Activities of daily living] are within the normal range. [Anaya] is oriented in all spheres and has average intelligence. Her ability to understand instructions is within the normal range. Her ability to carry out instructions, to concentrate and to persist at tasks is moderately to markedly limited by her psychological and medical problems. She has the ability to handle her own benefit payment.

*AR* at 366.

The evidence was presented to ALJ Richter, who denied benefits but was reversed on appeal. *AR* at 14, 656 (the original ALJ decision and the district court decision remanding, respectively); *Anaya v. Berryhill*, 1:17-cv-00826-LF, 2019 WL 1324957 at *1 (D.N.M. March 25, 2019) (unreported). In the Court's memorandum opinion and order, Magistrate Judge Laura Fashing held that Social Security Rulings ("SSRs") 83-10 and 96-8p required the ALJ to perform a "function-by-function analysis" of a claimant's physical abilities, addressing how long the claimant can sit, stand, walk, lift, carry, push, and pull during an eight-hour workday.[2] *AR* at

---

[2] Federal magistrate judges may conduct final proceedings in civil cases when all parties to the case consent. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(a). The parties did so in the first appeal of this case. *See Anaya*, 1:17-cv-00826-LF, CM/ECF docket no. 9.

661–62; *Anaya*, 2019 WL 1324957 at *3–4.  The Court described evidence suggesting that Anaya's medical conditions limit how much she can use her legs and found that ALJ Richter should have made detailed findings about Anaya's abilities to sit, stand, and walk during a standard workday.  *AR* at 662–65; *Anaya*, 2019 WL 1324957 at *4–6.  The case was thus remanded to the Administration, where the Appeals Council vacated ALJ Richter's first decision and ordered further proceedings consistent with the Court's order.  *AR* at 675.

Anaya's case was again assigned to ALJ Richter (*see AR* at 696–701) who held a second hearing on Anaya's disability status in July 2020.  *See AR* at 583–618.  ALJ Richter again denied benefits.  *AR* at 560.  The second decision was deemed final sixty days after Anaya was given notice of it (*AR* at 561) and Anaya timely appealed to this Court. [3]

### III. THE COMMISSIONER'S FINAL DECISION

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Administration must apply a five-step analysis to determine eligibility for benefits.  20 C.F.R. § 404.1520(a)(4). [4]

At step one of the sequential analysis, ALJ Richter found that Anaya last met the insured status requirements for disability insurance benefits on March 31, 2016 and had not engaged in substantial gainful activity from October 20, 2014 through her last insured date.  *AR* at 565.  At

---

[3] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  20 C.F.R. § 422.210(a);  *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").
[4] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

4

step two, she found that Anaya had the following severe impairments: acute deep venous thrombosis, pulmonary embolism, uterine fibroids, menorrhagia, myalgia with fatigue, and depressive disorder. *AR* at 566. At step three, she found that Anaya's impairments, individually and in combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P. *Id.*

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity is a multidimensional description of the work-related abilities a claimant retains despite her impairments. *Id.* at § 404.1545(a)(1). It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p at *Definition of RFC*. ALJ Richter found that Anaya, during insured period, could do the following:

> perform light work as defined in 20 C.F.R. [§] 404.1657(b) except she could frequently handle, finger and feel bilaterally; occasionally balance; and never climb ladders, ropes or scaffolds. She should avoid exposure to unprotected heights, hazardous machinery, and extreme cold. [Anaya] could have occasional interaction with supervisors, coworkers, and members of the public.

*AR* at 568.

ALJ Richter discussed virtually all evidence in the record in her explanation of Anaya's residual functional capacity. She first described Anaya's hearings in 2016 and 2020 where she complained of pain, depression, and anxiety. *AR* at 568–69. She then described evidence of Anaya's physical limitations in her medical records, finding that they showed "improvement with treatment, generally unremarkable or minimal objective findings, and activities not consistent with [Anaya's] alleged limitations." *AR* at 569–71. After that, ALJ Richter briefly addressed evidence of Anaya's mental limitations, finding that the evidence supported limitations in Anaya's ability to interact with others but in no other respects. *AR* at 571. Finally,

ALJ Richter addressed the varied opinion evidence, including an extensive discussion of Dr. Murphy's opinion to explain why she gave it limited weight. *AR* at 571–73. The residual functional capacity analysis was concluded with a summary of the evidence discussed, mostly restating what ALJ Richter found useful. *AR* at 573–74.

At step four, ALJ Richter found that Anaya was unable to perform any past relevant work through her insured period. *AR* at 574. At step five, though, ALJ Richter found that Anaya could have performed jobs that existed in significant numbers in the national economy during that time. *Id.* Anaya was thus found not to be under a disability during her insured period and ineligible for benefits. *AR* at 575.

IV.   **STANDARD OF REVIEW**

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See id.*; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

V.  **PARTIES' ARGUMENTS**

   a. Consultative Examiner Evidence

Anaya argues that ALJ Richter did not properly consider Dr. Murphy's opinion for two reasons. First, she points out that ALJ Richter did not expressly address Anaya's inability to perform serial 3's and 7's in her explanation of Anaya's residual functional capacity. [Doc. 29, p. 22]. In Anaya's view, this specific finding was strong evidence in favor of finding Anaya disabled and ALJ Richter's failure to address it while discussing Anaya's mental residual functional capacity was legal error requiring remand. *Id.* Second, Anaya attacks the substantiality of the evidence ALJ Richter relied upon to set aside Dr. Murphy's opinion. *Id.* at 22–23. Her treating physicians, she says, did not meaningfully examine her mental abilities, nor did they opine on her abilities to concentrate, persist, or maintain pace, yet ALJ Richter cited records and observations by those physicians to find that Anaya had no significant limitations in those respects. *Id.* at 22–23. Additionally, Anaya points to other evidence which "tends to support Dr. Murphy's opinion" and claims that ALJ Richter did not properly consider this evidence either. *Id.* at 23. In its totality, Anaya's argument suggests she believes the evidence against Dr. Murphy's opinion was less than a scintilla and was overwhelmed by contrary evidence, so ALJ Richter's findings do not deserve deference. *See id.* at 22–23.

The Commissioner disagrees. In response to Anaya's legal challenge, the Commissioner asserts that ALJ Richter was not required to discuss every piece of evidence, so the omission of the serial 3's and 7's finding in her residual functional capacity analysis was no error. [Doc. 33, pp. 9–10]. And, she says, to the degree that it needed to be discussed, ALJ Richter's brief discussion about that finding in the step two analysis was enough to show that ALJ Richter considered it. *Id.* at 9–10. In response to the factual challenge, the Commissioner argues that

7

ALJ Richter discussed all the evidence pointed to by Anaya, found it unpersuasive, and then supported the residual functional capacity findings with other evidence she found more persuasive. *Id.* at 10–11. This, the Commissioner says, was ALJ Richter's prerogative and this Court cannot reverse even if that evidence appears unpersuasive now. *Id.* at 10–11.

      b. <u>Sitting, Standing, and Walking Limitations</u>

Anaya also asserts that ALJ Richter erred when she did not find in Anaya's residual functional capacity that Anaya must keep her legs elevated for a significant amount of the day. [Doc. 29, p. 25]. According to Anaya, ALJ Richter's decision not to include such a limitation was based only on a "[r]eview of the treatment notes" showing "no evidence [Anaya] was advised to elevate her legs while sitting or that she reported doing so." *Id.* at 25 (quoting *AR* at 573–74). This, she says, was not a meaningful analysis and is inconsistent with both Anaya's testimony and common-sense medical knowledge about treating deep vein thrombosis symptoms. *Id.* at 25–26. It is normal, she asserts, for treatment notes not to reflect such a recommendation because saying "that a doctor has to write a prescription for a [deep vein thrombosis] patient to elevate [her] legs is akin to holding that a doctor has to write a prescription for a diabetic to avoid Coca Cola." *Id.* at 26–27.

The Commissioner argues that this is an issue of substantial evidence and that ALJ Richter's leg-elevation-free findings were supported. [*See* Doc. 33, pp. 4–7]. ALJ Richter, the Commissioner says, found little objective evidence to support Anaya's claims about leg pain; noted that treatment for Anaya's deep vein thrombosis appeared to control her objective symptoms; and found notes of subjective statements suggesting Anaya was experiencing less pain with treatment. *Id.* at 5. ALJ Richter also relied on evidence of Anaya's work history, then-present activities, and the opinion of consultative examiner Dr. Leslie Hopkins to conclude that

8

Anaya's leg pain did not create significant functional limitations. *Id.* at 6. The Commissioner thus asserts that the evidence supporting ALJ Richter's findings about Anaya's leg pain was substantial and that this meant ALJ Richter was not required to include a leg-elevation limitation in Anaya's residual functional capacity. *Id.* at 4–7.

    c. <u>Original District Court Order</u>

Finally, Anaya argues that ALJ Richter legally erred by failing to follow the mandates set forth in Judge Fashing's original order. Anaya points out that ALJ Richter's decision below, issued in 2020, contained some language almost identical to her first decision in 2016. [Doc. 29, pp. 24–25]; [Doc. 34, pp. 1–3] (comparing language between the two). This, she asserts, shows that ALJ Richter did not provide the "function-by-function" analysis she believes Judge Fashing's order required, but rather regurgitated the same deficient reasoning hoping for a different result. [Doc. 29, p. 24]. Anaya also argues that the similarities between ALJ Richter's first and second decisions are evidence that ALJ Richter did not actually consider all evidence in the case and thus did not comply with regulations. *See id.* at 23. Because ALJ Richter failed to comply with the order, Anaya asks the Court to reverse.

The Commissioner counters that ALJ Richter's second decision was different in important ways and complied with Judge Fashing's order. [Doc. 33, pp. 7–8]. She first states that ALJ Richter's second decision discussed the law cited by Judge Fashing as well as objective medical evidence, treatment records, Anaya's improvement over time, opinion evidence, and evidence of Anaya's activities and work history to find that she was not disabled. *Id.* at 7–8. This, she argues, shows that ALJ Richter addressed Judge Fashing's legal reasoning and thoroughly considered the evidence to produce a more detailed assessment of Anaya's residual functional capacity. *Id.* at 7–8. The Commissioner also urges the Court not to treat ALJ

Richter's first decision as evidence because it has been vacated by the Administration's Appeals Council, even if it was similar to ALJ Richter's second decision. *Id.* at p. 9.

## VI. ISSUES PRESENTED

(a) Whether ALJ Richter appropriately considered Dr. Murphy's opinion and relied on substantial evidence to reject it.

(b) Whether ALJ Richter erred by finding Anaya did not need to keep her feet elevated for a significant amount of time during the workday.

(c) Whether ALJ Richter followed the mandates set forth in Judge Fashing's original remand order.

## VII. ANALYSIS

The Commissioner is correct that ALJ Richter's dismissal of Dr. Murphy's opinion was supported by substantial evidence, but the case should be remanded because ALJ Richter did not follow Judge Fashing's mandate to perform a function-by-function analysis. Because the ALJ must perform the function-by-function analysis to determine whether Anaya's residual functional capacity should include limitations related to feet elevation, I do not propose any findings related to whether ALJ Richter erred by not including them.

    a. Consultative Examiner Opinion

        i. *Relevant Law*

ALJs must consider all evidence in the record when assessing a claimant's disability status and residual functional capacity. *See* 20 C.F.R. §§ 404.1520(a)(3), 404.1545(a)(3). This includes opinions of and findings by consultative examiners. *Id.* at § 404.1527(b). For claims filed before March 27, 2017, the weight given to a medical opinion depends in part on its source. *See id.* at § 404.1527(c). Medical opinions from sources who examined the claimant, such as

consultative examiners, generally receive more weight than non-examining sources in such cases. *Id.* at § 404.1527(c)(1). That said, the ALJ will also consider other factors to determine how much weight a medical opinion should receive, including how well-supported the opinion is, how consistent it is with the rest of the record, and whether the source is a specialist on the medical issues he opined on. *Id.* at § 404.1527(c)(3)–(6). When evidence is inconsistent, ALJs have discretion to weigh the conflicting evidence to determine whether the claimant has shown she is disabled. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b). ALJs' findings are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g).

      ii. *Application*

ALJ Richter did not err by giving Dr. Murphy's opinion limited weight even though Dr. Murphy examined Anaya. As stated above, examining source opinions are "generally" given greater weight, but this is only one factor considered by the ALJ. *See* 20 C.F.R. § 404.1527(c)(1)–(6). In her discussion about Dr. Murphy's opinion, ALJ Richter acknowledged that Dr. Murphy believed Anaya was moderately to markedly limited in her ability to carry out instructions, concentrate, and persist at tasks. *AR* at 572. ALJ Richter then pointed out specific evidence from Dr. Murphy's notes which seemed to contradict his opinion, including that Anaya performed well on a word-memory test, could spell a common word backwards and forwards, do basic math and make change, and showed average intelligence and judgment overall. *AR* at 368, 572. These observations can be interpreted reasonably as undermining the supportability of Dr. Murphy's opinion. *See* 20 C.F.R. § 404.1527(c)(3). ALJ Richter also noted that such a strong limitation appeared inconsistent with medical records suggesting that Anaya responded well to treatment for her depression, which goes to the consistency of Dr. Murphy's opinion with other evidence. *AR* at 572; 20 C.F.R. § 404.1527(c)(4). ALJ Richter thus weighed the various factors,

11

decided to afford Dr. Murphy's opinion limited weight, and supported her decision with specific and substantial evidence. She committed no reversible error by doing so.[5]

Anaya's arguments to the contrary fail. First, ALJ Richter's decision not to explicitly discuss Anaya's inability to perform serial 3's and 7's in her residual functional capacity findings is not a legal error requiring remand. ALJ Richter discussed this finding in her step two analysis; virtually every other observation by Dr. Murphy was mentioned in the residual functional capacity analysis. *AR* at 567, 572. Where, as here, I can follow ALJ Richter's reasoning and determine that correct legal standards were applied, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166. Second, although Anaya is correct that Dr. Murphy was the only psychologist to examine her, this does not mean ALJ Richter was required to adopt Dr. Murphy's opinion wholesale, especially when ALJ Richter found that Dr. Murphy's opinion was not fully supported and was inconsistent with other evidence. *See Roberts v. Astrue*, 2009 WL 975284 at *4–5 (D. Kan. April 10, 2009) (unreported) (holding that an ALJ's decision to afford little weight to an examining psychologist was proper and supported by substantial evidence even though no other mental examinations were conducted on the claimant). Finally, Anaya's argument that ALJ Richter did not consider several pieces of evidence supporting Dr. Murphy's opinion is meritless. The testimony and

---

[5] ALJ Richter also discounted Dr. Murphy's opinion because Dr. Murphy believed that Anaya's mental limitations were partially caused by her non-psychological medical problems and, in ALJ Richter's view, this finding was "outside of his specialty." *AR* at 572. Although ALJ Richter was authorized to consider whether Dr. Murphy was opining on matters outside the scope of his specialty (20 C.F.R. § 404.1527(c)(5)), it is not clear that this element of his opinion was outside that scope. Physical conditions often cause or exacerbate mental health disorders. *The Merck Manual* 1667 (18th ed., 2006) ("[m]ost people with severe physical conditions experience some kind of adjustment disorder, and those with underlying mental disorders may become unstable"). It would thus be expected for Dr. Murphy to consider how reported physical symptoms, such as pain, would affect Anaya's mental status. ALJ Richter also states that Dr. Murphy did not do a physical (*AR* at 572), but it is not clear what a physical examination would have added which other medical records would not. That said, the other reasons for discounting Dr. Murphy's opinion are supported well enough to satisfy the substantial evidence standard, so this does not affect my overall analysis.

opinion evidence Anaya lists in her brief is discussed in ALJ Richter's opinion – they are simply not given the weight Anaya believes they deserve. *See AR* at 568–69, 573. I thus recommend that the Court not reverse based on ALJ Richter's treatment of Dr. Murphy's opinion.

      b. <u>Judge Fashing's Mandate</u>

           i. *Relevant Law*

Under the "law of the case" doctrine, parties may not relitigate issues already decided by the Court unless an exception to the doctrine is met. *Grigsby v. Barnhart*, 294 F.3d 1215, 1218–19 (10th Cir. 2002). The "mandate rule" is a corollary to the doctrine, under which courts and administrative agencies must comply with mandates stated in the reviewing court's order on remand. *Id.* at 1218. Failure to comply with the order is reversible error which calls for remand on further review. *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

           ii. *Application*

This case should be remanded because ALJ Richter did not follow Judge Fashing's order that she provide a function-by-function analysis of Anaya's ability to work, particularly her abilities to sit, stand, and walk over the course of an eight-hour workday. Judge Fashing's order was clear: "The ALJ may express the [residual functional capacity] in terms of exertional levels only after performing a function-by-function analysis." *AR* at 661; *Anaya*, 2019 WL 1324957 at *3. She then specified that the analysis requires the ALJ to define the individual's ability to perform "each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing[,] and pulling." *AR* at 662; *Anaya*, 2019 WL 1324957 at *4 (quoting SSR 96-8p at *Exertional Capacity*). She even provided an example of what this would look like, stating "[f]or example, 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours.'" *AR* at 662; *Anaya*, 2019 WL 1324957 at *4 (quoting *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003)

(unpublished)).  Then, to illustrate the importance of such an assessment in this case, Judge Fashing detailed the voluminous evidence of Anaya's difficulties sitting, standing, and walking. *See AR* at 662–65; *Anaya*, 2019 WL 1324957 at *4–5.

Nowhere in her decision does ALJ Richter assess and make specific findings detailing how long Anaya can sit, stand, and walk during an eight-hour workday.  Instead, she makes the same error she did when this case was first appealed – she finds that Anaya could perform light work with some physical and social limitations, but does not directly address Anaya's capacities to sit, stand, and walk.  *Compare AR* at 23, 568 (first and second decision, respectively).  ALJ Richter thus did not follow the Court's order and her decision should be reversed.[6]

The Commissioner claims that ALJ Richter's discussion about the evidence, particularly the "In summary" paragraph, satisfied this Court's order.  It did not.  ALJ Richter's discussion of the evidence in her second decision is, admittedly, longer and more thorough than her discussion in the first decision.  *Compare AR* at 23–28, 568–74.  But the Court did not remand this case in 2019 merely because the agency decision needed more words.  The case was remanded so that ALJ Richter could review the evidence and specifically assess Anaya's abilities to sit, stand, and walk over the course of an eight-hour workday.  *See AR* at 662; *Anaya*, 2019 WL 1324957 at *4. Even though she discussed some evidence which may bear on that analysis, such as medical opinion evidence and notes from physical examinations (*see AR* at 573), ALJ Richter simply never did the specific analysis she was ordered to perform.  This violated Judge Fashing's order and I thus recommend reversal and remand.

---

[6] The Commissioner does not argue that any exception to the law of the case doctrine or the mandate rule applies, so I do not consider them.

## VIII.     CONCLUSION AND RECOMMENDATION

Wherefore, **I recommend** that Plaintiff Antoinette Anaya's Opposed Motion to Reverse and/or Remand, [Doc. 29], be **granted** and the Commissioner's Final Decision in this case be **reversed.**

_____
Jerry H. Ritter
U.S. Magistrate Judge